IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

JUANICE GIBBS                                                                                          PLAINTIFF

v.                              NO. 3:14-cv-00266 PSH

CAROLYN W. COLVIN, Acting Commissioner                                      DEFENDANT
of the Social Security Administration

### MEMORANDUM OPINION AND ORDER

Plaintiff Juanice Gibbs ("Gibbs") commenced the case at bar by filing a complaint pursuant to 42 U.S.C. 405(g). In the complaint, she challenged the final decision of the Acting Commissioner of the Social Security Administration ("Commissioner"), a decision based upon findings made by an Administrative Law Judge ("ALJ").

Gibbs maintains that the ALJ's findings are not supported by substantial evidence on the record as a whole and offers several reasons why.[1] She first maintains that her obesity is a severe impairment, and the ALJ erred when he failed to so find at step two of the sequential evaluation process.[2]

---

[1] The question for the Court is whether the ALJ's findings are supported by substantial evidence on the record as a whole. "Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision." See Boettcher v. Astrue, 652 F.3d 860, 863 (8th Cir. 2011).

[2] Gibbs is approximately five feet, seven inches tall and weighs 240 pounds. See Transcript at 27-28. She represents, and the Court accepts as true, that her Body Mass Index is therefore 38.8, see Pleading 13 at 17, or well within the obese range.

At step two, the ALJ is required to identify the claimant's impairments and determine whether they are severe. An impairment is severe if it has "more than a minimal effect on the claimant's ability to work." See Henderson v. Sullivan, 930 F.2d 19, 21 (8th Cir. 1992) [internal quotations omitted]. The determination is a medical one, see Bowen v. Yuckert, 482 U.S. 137 (1987), and the claimant has the burden of proving her impairment is severe. See Nguyen v. Chater, 75 F.3d 429 (8th Cir. 1995).

The ALJ considered Gibbs' obesity at step two. He considered but discounted that her obesity causes any symptoms. He also considered that her excessive weight can cause a limitation of function and acknowledged that her excessive weight can exacerbate her other impairments, impairments he identified as "status post carpal tunnel release surgery, degenerative disc disease with back pain, and leg pain." See Transcript at 11. He found, though, that her obesity does not result in more than minimal work-related limitations and, as a result, her obesity is not a severe impairment.

Substantial evidence on the record as a whole supports the ALJ's consideration of Gibbs' obesity at step two. The Court so finds because there is no medical evidence her excessive weight has more than a minimal effect on her ability to work or otherwise exacerbates her other impairments. For instance, although Dr. Sunil Gera, M.D., ("Gera") noted that Gibbs is obese, he made no mention of any work-related limitations caused by her excessive weight nor did he mention the impact it has on the pain she experiences. See Transcript at 236-243. It is worth noting that in one progress note, he encouraged her to "continue losing weight with daily exercising." See Transcript at 239.

Gibbs offers a second reason why the ALJ's findings are not supported by substantial evidence on the record as a whole. She maintains that the ALJ did not consider the effects of her obesity in assessing her residual functional capacity.

The ALJ is required to assess the claimant's residual functional capacity, which is a determination of "the most a person can do despite that person's limitations." See Brown v. Barnhart, 390 F.3d 535, 538-39 (8th Cir. 2004). The assessment is made using all of the relevant evidence in the record, but the assessment must be supported by some medical evidence. See Wildman v. Astrue, 596 F.3d 959 (8th Cir. 2010).

The ALJ assessed Gibbs' residual functional capacity and found that she is capable of performing light work, although she can only occasionally stoop, crouch, crawl, kneel, balance, climb, and can never climb ladders, ropes, or scaffolds. In making the assessment, he made only brief mention of her obesity.

The ALJ's failure to give more than brief mention to Gibbs' obesity in assessing her residual functional capacity is not error. The Court so finds because the evidence does not suggest that her excessive weight causes greater work-related limitations than he found. The medical evidence contains little mention of her excessive weight, save the occasional observation that she is obese or "well nourished." See Transcript at 236, 335, 337. The medical evidence is silent as to what, if any, work-related limitations are caused by her obesity. Although Gibbs testified that she can only walk for about forty-five to sixty minutes at a time, see Transcript at 37, there is little evidence her lack of full mobility is caused by, or otherwise exacerbated by, her excessive weight.

Gibbs offers a third reason why the ALJ's findings are not supported by substantial evidence on the record as a whole. She maintains that her residual functional capacity was not properly assessed. She so maintains, in part, because the ALJ improperly discounted the opinions of her treating physician, Dr. Samuel Meredith, M.D., ("Meredith"), and a state agency physician, Dr. Jonathan Norcross, M.D., ("Norcross").

A treating physician's medical opinions are given controlling weight if they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence. See Choate v. Barnhart, 457 F.3d 865 (8th Cir. 2006). A treating physician's medical opinions are not automatically controlling, though, because "the record must be evaluated as a whole." See Id. The ALJ may discount a treating physician's medical opinions if "other medical assessments are supported by better or more thorough medical evidence or where a treating physician renders inconsistent opinions that undermine the credibility of his opinion." See Id. (internal quotations omitted). The opinions of a non-treating, non-examining physician are not accorded such weight. See McCoy v. Astrue, 648 F.3d 605 (8th Cir. 2011) (opinions of non-treating, non-examining sources generally given less weight than those of treating, examining sources).

The ALJ assessed Gibbs' residual functional capacity and found, in part, that she can perform frequent handling and fingering. In so finding, the ALJ considered Meredith's medical opinions. It is not clear what weight the ALJ accorded the opinions, but he found the following with respect to one entry in Meredith's progress notes:

-4-

> ... Meredith noted at Exhibit 13F/6 that the claimant "was unable to continue (to) work." It is unclear whether Dr. Meredith is making an opinion here or merely stating the claimant felt she was unable to work. If Dr. Meredith was indeed making an opinion, this opinion is given <u>limited</u> weight because:
>
> - the doctor did not have the benefit of reviewing the other medical reports contained in the current record;
>
> - there is no evidence that the doctor is familiar with the Agency's rules and regulations regarding disability;
>
> - the doctor's opinion is without substantial support from the other evidence of record, which obviously renders it less persuasive;
>
> - the opinion expressed by the doctor is quite conclusory, providing very little explanation of the evidence relied on in forming that opinion; and
>
> - the doctor's own reports fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled, and the doctor did not specifically address this weakness.

<u>See</u> Transcript at 15. [Emphasis in original]. The ALJ also considered Norcross' medical opinions in assessing Gibbs' residual functional capacity. The ALJ accorded Norcross' opinions "some weight," <u>see</u> Transcript at 15, save Norcross' opinion that Gibbs can only occasionally use levers with her left upper extremity. The ALJ accorded that opinion only "limited weight." <u>See</u> Transcript at 15. The ALJ accorded the opinion only limited weight because "[n]o objective medical evidence supports [the] finding, and Dr. Norcross [did] not give any explanation whatsoever as to why he thinks [the] limitation is appropriate." <u>See</u> Transcript at 15.

Substantial evidence on the record as a whole supports the ALJ's evaluation of the medical opinions offered by Meredith and Norcross. There is no evidence the ALJ accorded the opinions improper weight. The ALJ could and did discount the notation in Meredith's progress note that "Gibbs was unable to continue work," see Transcript at 356, and Norcross' opinion that Gibbs can only occasionally use levers with her left upper extremity does not affect the outcome of this case because her past relevant work as a teacher's aide and retail sales clerk does not require the use of levers.

The record reflects that Meredith saw Gibbs on approximately eleven occasions between March of 2012 and March of 2013. See Transcript at 290-291 (03-27-2012), 292-294 (04-12-2012), 299 (04-25-2012), 295 (05-15-2012), 298 (05-16-2012), 296 (05-24-2012), 297 (06-05-2012), 333 (06-26-2012), 330 (09-04-2012), 331-332 (09-18-2012), 356 (03-21-2013). He observed, inter alia, that her range of motion in her back and extremities was within normal limits and her muscle strength was "5/5." See Transcript at 290-291, 292-293. He found, though, that she was experiencing pain and numbness in her hands. He diagnosed bilateral carpal tunnel syndrome and "bilateral ulnar nerve neuropathy at the groove or cubital tunnel," see Transcript at 291, 293, a diagnosis confirmed by medical testing, see Transcript at 303-305. Meredith thereafter performed a "carpal tunnel release" on Gibb's hands. See Transcript at 298, 299. When he saw her again, he noted that she was experiencing no problems with her right hand but continued to experience difficulties with her left hand. See Transcript at 352. In March of 2013, he prepared a progress note that contained, inter alia, the following notation:

> Ms. Gibbs was unable to continue work. She continued to have chronic and intermittent swelling in her hands, occasional neuritic pain unexplainable and not focal or specific or anatomic, as well as intermittent triggering in multiple digits. She had significant triggering in both thumbs at one time which cleared up and now she is mildly triggering in all ulnar three hands on both hands.

See Transcript at 356.[3]

It is not clear what weight the ALJ accorded Meredith's medical opinions, but they are consistent with, and support, the ALJ's assessment of Gibbs' residual functional capacity. With respect to the notation that "Gibbs was unable to continue work," see Transcript at 356, substantial evidence on the record as a whole supports the ALJ's consideration of the notation. The Court so finds for three reasons. First, as the ALJ observed, it is not clear whether Meredith was offering his opinion of Gibbs' ability to work at that time or in the future. It is more likely than not that he was simply recording her representation of having previously stopped working because of the pain and numbness in her hands.

Second, assuming Meredith was offering his opinion, it encroaches upon a matter reserved exclusively to the ALJ. It is axiomatic that "[a] medical source opinion that an applicant is "disabled' or 'unable to work' ... involves an issue reserved for the [ALJ] and therefore is not the type of 'medical opinion' to which the [ALJ] gives controlling weight." See Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005).

---

[3] It is likely that Meredith's progress note contains a typographical error as it is not clear what is meant by "she is mildly triggering in all ulnar three hands on both hands." See Transcript at 356.

Third, assuming Meredith was offering his opinion, it is inconsistent with his own progress notes. A fair reading of his progress notes reflect that while Gibbs continued to experience some pain and numbness in her hands, the pain and numbness was not so severe as to be completely disabling. For instance, in March of 2012, he observed that her range of motion in her wrists was within normal limits. See Transcript at 291. In September of 2012, he had observed that she could "choose to try to go back to work on an unrestricted basis." See Transcript at 353.

With respect to Norcross' opinions, the record reflects that he reviewed Gibbs' medical records in July of 2012. See Transcript at 322-329. He opined that she is capable of occasionally lifting and/or carrying twenty pounds, frequently lifting and/or carrying ten pounds, standing and/or walking for a total of about six hours in an eight hour workday, sitting for a total of about six hours in an eight hour workday, but had a limited ability to push and pull with her upper extremities. See Transcript at 323. He opined that the medical evidence of record supported a light residual functional capacity with postural limits and only an occasional use of levers with her left upper extremity. His findings were subsequently affirmed by Dr. Jim Takach, M.D. See Transcript at 350.

Norcross' opinions are consistent with, and support, the ALJ's assessment of Gibbs' residual functional capacity. Although Norcross opined that Gibbs can only occasionally use levers with her left upper extremity, an opinion that is contrary to the ALJ's finding that Gibbs can perform frequent handling and fingering, the Court need not resolve the conflict because the opinion does not affect the outcome of this case.

The ALJ found that Gibbs has past relevant work as a teacher's aide, the Dictionary of Occupational Titles ("DOT") listing for which is 249.367-074. See Transcript at 16. He also found that she has past relevant work as a retail sales clerk, the DOT listing for which is 261.357-066. See Transcript at 16. A vocational expert testified that a hypothetical individual with Gibbs' age, education, work experience, and residual functional capacity would be able to perform either of those two jobs. See Transcript at 39-44. The ALJ adopted the vocational expert's testimony and found at step four of the sequential evaluation process that Gibbs can perform her past relevant work as a teacher's aide and as a retail sales clerk.[4] The DOT listings for the jobs do not suggest that the operation of levers is required to perform the jobs, and there is nothing else to suggest that the jobs require the operation of levers.

Gibbs offers a fourth reason why the ALJ's findings are not supported by substantial evidence on the record as a whole. She maintains that her residual functional capacity was not properly assessed, in part, because the evaluation of her credibility was flawed. She maintains that the ALJ mis-characterized the record in evaluating her credibility and failed to even mention the factors outlined in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984).

---

[4] The ALJ made an alternate finding and found at step five of the sequential evaluation process that there are other jobs a hypothetical individual with Gibbs' age, education, work experience, and residual functional capacity can perform. See Transcript at 16-17. The Court need not consider whether his finding is supported by substantial evidence on the record as a whole because substantial evidence on the record as a whole supports his decision at step four, that is, Gibbs retains sufficient residual functional capacity to perform her past relevant work as a teacher's aide and retail sales clerk. He could therefore have properly stopped at step four.

As a part of assessing a claimant's residual functional capacity, the ALJ must evaluate the claimant's credibility regarding her subjective complaints. See Polaski v. Heckler, supra. The ALJ does so by considering the medical evidence as well as evidence relating to such matters as the claimant's daily activities; the duration, frequency, and intensity of his pain; the dosage, effectiveness, and side effects of his medication; precipitating and aggravating factors; and functional restrictions. See Id.

In assessing Gibbs' residual functional capacity, the ALJ evaluated her credibility pursuant to the factors outlined in 20 C.F.R. 404.1529(c)(3), 20 C.F.R. 416.929(c)(3), and Social Security Ruling 96-7p. He found that although her impairments could "reasonably be expected to cause the alleged symptoms," her statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible. See Transcript at 15. He so found on the basis of her daily activities, her largely routine and conservative treatment, and the absence of any medical opinions attesting to her disabling condition.

The ALJ's evaluation of Gibbs' credibility conforms to the requirements of Polaski v. Heckler and is supported by substantial evidence on the record as a whole. There is no evidence he mis-characterized the record, and he was not required to cite Polaski v. Heckler. He was only required to acknowledge and consider the Polaski v. Heckler factors before discounting her subjective complaints. See Eichelberger v. Barnhart, 390 F.3d 584 (8th Cir. 2004). In any event, he cited and applied 20 C.F.R. 404.1529(c)(3), 20 C.F.R. 416.929(c)(3), and Social Security Ruling 96-7p, all of which mirror the factors outlined in Polaski v. Heckler.

The ALJ considered the medical evidence. See Transcript at 13-15. It establishes that there is a medical explanation for the pain and numbness Gibbs experiences in her hands, that being her carpal tunnel syndrome. The medical evidence also establishes that there is a medical explanation for the pain she experiences in her back and legs, that being her degenerative disc disease. He incorporated some of the limitations arising from those impairments into the assessment of her residual functional capacity and found that she can perform light work with some additional limitations.

The ALJ also considered the non-medical evidence. See Transcript at 15-16. He considered Gibb's daily activities, activities that are capable of more than one acceptable characterization. She testified during the administrative hearing that she does very little during a typical day, see Transcript at 33-34, but the record does not support such a severe limitation of her daily activities. He also considered her use of medication and could and did note that it was routine and/or conservative. The carpal tunnel surgery she had and the medication she takes help relieve her symptoms. He gave little mention to the other Polaski v. Heckler factors, but he did not commit reversible error in doing so. The evidence relevant to those factors is minimal and does not support her assertion of disabling pain.

The ALJ is charged with the responsibility of assessing credibility, and Gibbs has offered no legitimate reason for questioning the ALJ's assessment. The characterization of the evidence made by the ALJ is one of the acceptable characterizations. Thus, there is no error.

On the basis of the foregoing, the Court finds that there is substantial evidence on the record as a whole to support the ALJ's findings. Accordingly, Gibbs' complaint is dismissed, all requested relief is denied, and judgment will be entered for the Commissioner.

IT IS SO ORDERED this 21st day of August, 2015.

_____
UNITED STATES MAGISTRATE JUDGE